IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00111-RMR-NRN

GIOVANOSKA GONZALEZ,

Plaintiff,

v.

GROUP VOYAGERS INC.
A/K/A GLOBUS,
A/K/A COSMOS,
A/K/A MONOGRAMS, and
A/K/A AVALON WATERWAYS,

Defendant.

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. #71)**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #72) issued by Judge Regina M. Rodriguez referring Defendant Group Voyagers, Inc., a/k/a Globus, a/k/a Cosmos, a/ka Monograms and a/k/a Avalon Waterways' ("Defendant" or "Group Voyagers") Motion for Summary Judgment (Dkt. #71).[1] Plaintiff Giovanoska Gonzalez ("Ms. Gonzalez" or "Plaintiff") filed a response (Dkt. #70), and Defendant filed a reply (Dkt. #74). The Court heard argument from the parties on August 22, 2022 (Dkt. #79).

---

[1] Defendant filed its summary judgment motion and subsequent reply under restriction. The Court later ordered these documents be unrestricted. (*See* Dkt. #79.) In this Recommendation, the Court will generally refer to the actual documents (Dkt. ##63 & 74) rather than the publicly available, text-only docket entries (Dkt. ##71 & 75).

The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is hereby **RECOMMENDED** that Defendant's Motion for Summary Judgment (Dkt. #71) be **GRANTED**.

## BACKGROUND[2]

Plaintiff, proceeding pro se, initiated this employment discrimination lawsuit on January 14, 2021. (Dkt. #1.) She asserts three claims for relief: (1) retaliation based on race, religion, national origin, and color in violation of 42 U.S.C. § 2000e ("Title VII"), (2) retaliation based on race, national origin, and color in violation of 42 U.S.C. § 1981; and (3) discrimination based on race, color, and national origin in violation of Title VII.

Defendant now moves for summary judgment on all three claims. The motion's Statement of Undisputed Material Facts section is 57 paragraphs long and each statement includes a citation to material in the record. Plaintiff objects for one reason or another to all but one of the Defendant's statements. Many of Plaintiff's objections do not place the fact at issue in genuine dispute, but instead consist of Plaintiff's commentary and/or argument regarding the purported fact.[3] Plaintiff also offers 28

---

[2] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[3] For example, in response to Defendant's statement that it "operates in the travel and tourism industry, facilitating trip itineraries for travel groups," (Dkt. #63 ¶ 9), Plaintiff states, "Plaintiff disputes 'trip itinerary for travel groups.' The company also sells for individuals through certified travel agents." (Dkt. #70 ¶ 9.) And after Defendant accurately summarized Plaintiff's deposition testimony (*see* Dkt. #63 ¶ 35), Plaintiff responds, "Denied. Defendant misinterpreted events in this lawsuit and offers a splitting of events based on Counsel's assumptions." (Dkt. #70 ¶ 35.) In fact, Plaintiff challenges the accuracy of the deposition transcripts (*see id.* ¶¶ 22, 40), and, at one point, objects to the citing of Plaintiff's own statements as "hearsay." (*Id.* ¶ 41.)

paragraphs of her own "relevant facts," most of which Defendant disputes. Unless otherwise noted, there is no *genuine* dispute as to the following *material* facts.

Defendant is a company that operates in the travel and tourism industry. (Dkt. #63 ¶ 9.) In July 2019, Plaintiff was hired as Travel Agent Sales and Service ("TASS") Associate. (*Id.* ¶ 12.) Plaintiff is Catholic, "Hispanic[,] and from Venezuela." (*Id.* ¶ 16; Dkt. #70 ¶ 16.) On July 11, 2019, her first day of employment, Plaintiff signed an acknowledgement of receipt of Defendant's employee handbook, which contains antidiscrimination policies and procedures, although Plaintiff states she did not have the opportunity to read the handbook before signing. (Dkt. #63 ¶¶ 10–11; Dkt. #70 ¶ 11.)

In September 2019, Plaintiff transferred to a Sales and Marketing Coordinator ("SMC") position. (Dkt. #63 ¶ 13.) Her supervisor was Vince Minor. (*Id.* ¶ 15.) On September 27, 2019, Plaintiff sent an email to Beth Lindemuller, a Sales Development Supervisor, complaining about a lack of training. (*Id.* ¶ 18.) Mr. Minor and Mary Cox, the Human Resources Director, were copied on the email. (*Id.* ¶ 17.) Plaintiff's email also stated, "It was quite amusing that this week one SMC said that I just keep coming back every morning or mistakenly confusing my national origin with Indian instead of Hispanic." (*Id.* ¶ 19.) During her deposition, Plaintiff stated that Cindy Desaverio made the first comment, and Cherelle Williams was the person confusing Plaintiff's national origin. (*Id.* ¶ 20.)

Defendant's Human Resources Manager, Tisha Deden, followed up with Plaintiff about her complaint. (*Id.* ¶ 22.) It was arranged that Plaintiff and Mr. Minor would meet one hour per day for a review of her job duties. (*Id.* ¶ 23; Dkt. #70 ¶ 23.) At one of those

3

meetings, Mr. Minor allegedly made a comment about Plaintiff's "broken English." (Dkt. #63 ¶ 24.)

On October 11, 2019, Plaintiff told Mr. Minor about allegedly "racist comments" made by a co-worker, Sarah Boger, who allegedly stated that "you only find chili and balloons" in the state of New Mexico. (*Id.* ¶ 25.) Plaintiff found the comment "diminishing" regarding New Mexico and racist because New Mexico has a lot of Hispanic heritage. (*Id.* ¶ 26.) Plaintiff reported the comment to Human Resources and was told that an investigation was conducted and then closed. (*Id.* ¶ 28.)

On October 14, 2019, Plaintiff sent an email to Mr. Minor and Ms. Deden complaining of, among other things, Ms. Boger's New Mexico comment, which "was racist against anspecific State that happen to have a well-known Hispanic population and History."[4] (*Id.* ¶¶ 29–30.) She also stated that she "caught the others SMC lying and sabotaging me." (*Id.* ¶ 35.)

In response to her complaints, Ms. Deden offered to sit down with Plaintiff and her coworkers to discuss their outstanding issues, but Plaintiff refused because the work environment was "so toxic" that it would not help. (*Id.* ¶ 37.)

On October 15, 2019, Plaintiff received an email from customer Janet O'Day, who stated that Plaintiff's recent correspondence "was a very curt reply, which I don't appreciate." (*Id.* ¶ 42.) The next day, Mr. Minor asked Plaintiff to send him all drafted email correspondences for his review prior to sending them to outside customers. (*Id.* ¶ 43.) Plaintiff claims that this incident was overblown and points out that Ms. O'Day

---

[4] Unless noted otherwise, language taken from the parties' emails are quoted verbatim.

4

apologized to her on October 16, 2019, and did not raise the subject again. (Dkt. #70 ¶¶ 38, 43; Dkt. #70-1 at 21.) According to Plaintiff, Mr. Minor's scrutiny was discriminatory and based on her English language skills. (*Id.* ¶ 44.)

On October 23, 2019, Mr. Minor emailed Plaintiff, stating,

> As part of my coaching process with you . . . all emails you respond to or send to our external you first forward them to me prior to sending for review or accuracy and quality. Since I have not received such correspondence from you, I am confirming that you have not sent any emails to external clients. Is this correct?

(Dkt. #63 ¶ 44.)

On October 24, 2019, Plaintiff sent an email to Ms. Deden that Mr. Minor's directive was "a discriminatory practice. The communication concerns came after I disclosed I'm Hispanic on 9/27/19 to Beth. No other employee is subject to the same treatment." (*Id.* ¶ 45.)

On October 28, 2019, Mr. Minor again asked Plaintiff to send him drafts of all email correspondence for his review. (*Id.* ¶ 46.) Other managers were also emailing Plaintiff about her job performance. (*Id.* ¶ 48.) Plaintiff sent an email to them on October 29, 2019, stating, in part, "You're just profiling because I'm from South America." (*Id.* ¶ 47.) In an email summarizing a meeting that had been held later that morning, Ms. Deden reiterated to Plaintiff the expectation that all her emails were to be approved before being sent. (*Id.* ¶ 49.)

On November 4, 2019, Mr. Minor emailed Plaintiff that Kimbela Pierce, another Business Development Manager, "request[ed] to review all drafts of any marketing collateral such as flyers . . . before sending to the Group leader." (*Id.* ¶ 50.) Plaintiff responded, saying that she believed that Mr. Minor misunderstood when a review of marketing materials was necessary, and further stating, "I just experienced another

5

racist remark . . . . Louisa Mueller stated I didn't want the chocolate [brought by a co-worker] because it's America[n]." (*Id.* ¶ 51.) Later on November 4, 2019, Plaintiff emailed Ms. Deden, Mr. Minor, Ms. Pierce, and Taylor Crawford, Mr. Minor's manager, noting that she construed the instruction to send marketing materials to Business Development Managers to mean that "[t]he marketing role has been officially removed from my duties." (Id. ¶ 52.) Ms. Deden responded that there was no change in her job duties and again instructed Plaintiff to send draft emails to Mr. Minor for approval. (*Id.* ¶ 53.)

On November 12, 2019, Ms. Deden emailed Plaintiff with an assignment from Mr. Minor that needed to be completed that day, and warned that a failure to do so, along with continued ignoring of emails, would result in termination. (*Id.* ¶ 54.) Plaintiff responded the same day, questioning her work on a separate assignment and stating, "Insubordination is a scheme to brush off my discrimination concerns that you never addressed." (*Id.* ¶ 55.) Plaintiff did not complete the assignment that day, although she states it was only because there was confusion over where an email was to be sent. (*Id.* ¶¶ 56–57, Dkt. #70 ¶¶ 56–57.) She completed the task the next day. (Dkt. #70 ¶ 57.) Her employment was terminated for performance reasons on November 13, 2019. (Dkt. #70-1 at 14.)

Plaintiff states that she received compliments on her job performance at various times from colleagues and clients. (Dkt. #70 ¶¶ 64, 67–69.) She believes that she was singled out and discriminated against due to her race, religion, and national origin. (*See generally* Dkt. #1.)

6

Plaintiff filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC"), signed and dated January 15, 2020. (Dkt. #63 ¶ 1.) The Charge of Discrimination alleged discrimination based on "National Origin/Ancestry (Hispanic/Venezuelan); Retaliation." (*Id*. ¶ 2.) Plaintiff did not check the boxes for religion or race as circumstances of alleged discrimination. (*Id*.¶ 3.) Plaintiff submitted to the CCRD and EEOC a Statement of Discrimination, in which Plaintiff mentioned only (a) her language skills (i.e., she was told that she "can't speak English" and her "writing skills are poor and insufficient" to perform her job), and (b) that she was "born in South America" (i.e., her national origin). (*Id.* ¶¶ 4–5.) Plaintiff did not mention her race or religion in her Statement of Discrimination. (*Id.* ¶ 6.) Plaintiff claims this due to an error by the CCRD employee who drafted the document. (Dkt. #70 ¶¶ 2, 5, 6.)

## LEGAL STANDARDS

### I.  Pro Se Litigants

Plaintiff proceeds pro se. Accordingly, the Court "review[s her] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). This standard "applies to all proceedings involving a *pro se* litigant, including . . . summary judgment proceedings." *Espinoza-Horiuchi v. Walmart Stores, Inc.*, 2016 WL 1275494 at *1 (D. Colo. Mar. 7, 2016) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). However, "pro se parties [must] follow the same rules of procedure that govern other litigants." *Calbart v. Denver Sheriff Dep't*, 505 F. App'x 703, 705 (10th Cir. 2012). Plaintiff's pro se status does not entitle her to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II. Motion for Summary Judgment under Rule 56

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined.

8

*Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

### I. Standards of Admissibility

As an initial matter, the Court notes that Plaintiff objects that Defendant failed to prove that its exhibits "are admissible and/or relevant for this action." (Dkt. #70 at 12.) Rule 56 permits a party to "object that the material cited to support or dispute a fact *cannot* be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). But "[a]t the summary judgment stage, the parties need not submit evidence in a *form* admissible at trial[.]" *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) (emphasis added). It is the content or the substance of the evidence that must be admissible. *Id.* Plaintiff has not demonstrated that the material cited by Defendant *cannot* be presented in admissible form at trial.

9

**II. Exhaustion of Administrative Remedies**

Moving to the substance of the summary judgment motion, Defendant first argues that Plaintiff did not exhaust her administrative remedies regarding allegations of discrimination based on race and religion. The Court agrees in part.

For a Title VII claim, a plaintiff must exhaust her administrative remedies for each individual discriminatory or retaliatory act. *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003). In determining whether a plaintiff has exhausted her administrative remedies, the Court must identify the scope of the allegations raised in the EEOC charge because a "plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Mackenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). "The exhaustion rule derives from two principal purposes: '1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance.'" *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994)).

The failure to mark a particular box on a charge of discrimination creates a presumption that the charging party is not asserting claims represented by that box. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim. *Id.*

Here, Plaintiff's charge did not mark the box for discrimination based on religion or race. (Dkt. #63 at 31.) The charge only marked the boxes labeled "retaliation" and "national origin." (*Id.*) Accordingly, there is a rebuttable presumption that Plaintiff is not

bringing claims for discrimination based on race or religion. *See Jones*, 502 F.3d at 1186.

Plaintiff apparently concedes that the charge does not contain allegations of racial or religious discrimination, but she blames the CCRD worker who processed her complaint: "The claims of race and religion were before the CCRC but omitted from the final Charge of Discrimination without any 'rationale,' Plaintiff believes religion was a sensitive topic for the State Agency." (Dkt. #70 at 11.) This is not sufficient to overcome the rebuttable presumption, at least with regard to Plaintiff's religion. It is undisputed that Plaintiff signed, under oath, an administrative complaint that only mentions discrimination based on retaliation and her "Hispanic/Venezuelan" ancestry. (Dkt. #63 at 27–28.) "Hispanic" here refers to a race, but Plaintiff has failed to show how the charge could reasonably have led to an administrative investigation of discrimination based on religion when the administrative complaint, statement of discrimination, and charge itself contain no mention of this protected class. Plaintiff has not identified any "minimally sufficient" allegations in her EEOC charge regarding discrimination claim based on religion. Summary judgment should be granted in Defendant's favor on this basis.[5]

Whether Plaintiff has adequately exhausted her claim for race discrimination is a closer issue. Given that EEOC charges "are traditionally filed by non-attorneys," the Tenth Circuit "has repeatedly emphasized that the charges should be liberally construed at all levels of their review." *Smith*, 904 F.3d at 1166 (quotation marks and alterations

---

[5] "[A] plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). Defendant asserted this affirmative defense in its Answer. (*See* Dkt. #7 at 8, ¶ 8.)

11

omitted). The Court will assume, therefore, that the scope of Plaintiff's charge includes allegations of discrimination based on race, in addition to national origin.

### III. Discrimination and Retaliation

Title VII makes it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." See 42 U.S.C. § 2000e-2(a)(1). Section 1981 gives "all persons . . . the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws." 42 U.S.C. § 1981(a). The standards for evaluating the claims are the same. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

To survive summary judgment on a claim of discrimination based on race, color, religion, sex, or national origin, a plaintiff must present either direct evidence of discrimination or, as is the case here, indirect evidence that satisfies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first "raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted). The burden then "shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* If the employer does so, "the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (internal quotation marks omitted).

To make a prima facie case of discrimination, Plaintiff must demonstrate (1) membership in a protected class, (2) job qualification and satisfactory performance, and (3) an adverse employment action under circumstances giving rise to an inference of discrimination. *Anderson v. Academy Sch. Dist.*, 122 F. App'x 912, 915 (10th Cir. 2004). It is Plaintiff's burden to make that initial prima facie showing, but it is not an onerous one. *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

A claim of Title VII retaliation can likewise be proven either by direct evidence or by reliance on the *McDonnell Douglas* framework. *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). "To state a prima facie Title VII retaliation claim, 'a plaintiff must show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)).

Plaintiff claims she suffered from discrimination on several occasions, including when: Ms. Deden asked whether she spoke Portuguese; Mr. Minor "degraded" her accent by stating that she speaks "broken English"; one of her coworkers stated that New Mexico only had chilis and hot air balloons; a coworker told Plaintiff that she probably did not like "American" chocolate; and Mr. Minor directed her to send him drafts of all emails before she sent them outside the company. She alleges that she was fired because she complained about this treatment.

Defendants argue that Plaintiff has not proven a prima facie case either discrimination or retaliation. However, the Court need not address these arguments

because it finds that, even if Plaintiff has established a prima facie case discrimination and retaliation, Defendant has set forth legitimate, non-discriminatory reasons for the adverse employment actions and Plaintiff has not carried the burden of showing that the proffered reasons are a pretext.

First, it is undisputed that Mr. Minor only demanded to review Plaintiff's emails after a customer told Plaintiff that she did not "appreciate" Plaintiff's "very curt reply." (Dkt. #63 ¶¶ 42, 43.) This was not a permanent requirement. Mr. Minor stated, "Once I feel that a concise, professional message is being sent to [Group Leaders] on a consistent basis then we will end this step." (*Id.* at 75.) Plaintiff was given two warnings to comply with this and other directives. (*Id.* at 110–13.) She was also reminded to do so several times via email. (*Id* ¶¶ 44, 46, 49, 43, 54.) Plaintiff admits that she did not comply with these instructions; instead, she claims she was "opposed to this practice because it was discrimination" and she found it "oppressive." (Dkt. #70 ¶¶ 49, 50.)

Next, on November 12, 2019, Ms. Deden emailed Plaintiff with a task that had to be completed that day or Plaintiff would be terminated. (Dkt. #63 ¶ 54.) Plaintiff completed the task on November 13, 2019, and therefore did not comply with the command. (Dkt. #70 ¶ 59.)

Thus, there were legitimate reasons for the adverse employment actions Plaintiff identifies as being motivated by discrimination. Namely, Plaintiff failed—indeed, in some cases, *refused*—to comply with her supervisor's explicit instructions.

Plaintiff has not demonstrated that these reasons are pretextual. A plaintiff can demonstrate pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its

14

action that a reasonable factfinder could rationally find them unworthy of credence." *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002) (citations omitted).

Here, Plaintiff points to correspondence from clients indicating satisfaction with Plaintiff's job performance. (*See* Dkt. 70-1 at 19–31.) However, all of these predate Mr. Minor's requirement that he review Plaintiff's emails and are therefore of limited relevance.

Plaintiff also disputes Defendant's contention that she stopped responding to clients, noting that the evidence shows she made phone calls to them. (Dkt. #70 at 11.) Notwithstanding that this can reasonably be interpreted as an attempt by Plaintiff to circumvent Mr. Minor's instructions, the fact remains that Plaintiff admits that she did not forward draft emails to Mr. Minor or other supervisors. (*See* Dkt. #74 at 14–15.)

Further, Plaintiff claims that the reason she could not complete the task Mr. Minor assigned to her by the November 12, 2019 deadline is because "defendant created confusion about the emails received by employees. Plaintiff was unsure about Mr. Crane proper mailing address due to Company statement on November 4, 2019." (Dkt. #70 ¶ 73.) However, the documents she cites are emails warning Defendant's employees to be wary of *opening* "weird/foreign" phishing-type emails. (*See* Dkt. #70-1 at 41–44.) How these communications created confusion about where or how Plaintiff was supposed to *send* emails is left unexplained.

Finally, Plaintiff claims in her Complaint that Defendant treated her differently than similarly situated colleagues in making disciplinary decisions. In the Tenth Circuit, "an inference of discrimination" can be shown through evidence "that the employer

15

treated similarly situated employees more favorably." *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) (citing *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800-01 (10th Cir. 2007)). "[E]vidence that a similarly situated employee was treated differently may aid the plaintiff in satisfying its burden to establish a prima facie case of discrimination, or, in other circumstances, may raise an inference of pretext in the third stage of the *McDonnell Douglas* burden-shifting method of proof." *PVNF*, 487 F.3d at 802 (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173–74 (10th Cir. 2005)).

Individuals are considered "similarly situated" for purposes of Title VII "when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *Id.* at 801 (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)). To show disparate treatment, a plaintiff must show that she was similarly situated to his comparators in "all relevant respects," and courts traditionally "compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *McGowan*, 472 F.3d at 745 (citation omitted).

Here, Plaintiff has not shown that there were other SMCs supervised by Mr. Minor who sent arguably unprofessional emails to customers but were not required to submit draft emails for review. Insofar as Plaintiff argues that Mr. Minor himself was chastised by a customer for his tone (*see* Dkt. #70 ¶ 71), he and Plaintiff are not similarly situated to each other. Similarly, Plaintiff has not demonstrated that there are other employees with Plaintiff's alleged record of insubordination who were told to

complete an assignment by a certain deadline or be terminated, and then did not complete the assignment but kept their jobs anyway.

Plaintiff argues that Defendant "failed to prove that other employees were subjected to scrutiny and revision of their speech contemporaneously with Plaintiff['s] employment," and that "Defendant cannot identify other employees 'disciplined' and terminated for the same reason as Plaintiff." (*Id.* at 12, 13.) But "[t]he burden is on the plaintiff to demonstrate [s]he is similarly situated to the employees to whom [s]he is comparing [her]self." *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000). Plaintiff has not done so here.

Plaintiff has therefore not met her burden of showing that her performance issues were a mere pretext for her termination. Accordingly, summary judgment should be granted in favor of Defendant on all claims.

## CONCLUSION

In light of the foregoing, there is no genuine dispute of material fact that Plaintiff's discrimination and retaliation claims are barred by the existence of legitimate, non-discriminatory reasons for her termination, which Plaintiff has not shown to be a mere pretext. It is therefore **RECOMMENDED** that Defendant's Motion for Summary Judgment (Dkt. #71) be **GRANTED.**


**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:   January 12, 2023
         Denver, Colorado

_____
N. Reid. Neureiter
United States Magistrate Judge